**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RANDAL P. FORNES,**

      **Plaintiff,**

**-vs-**              **Case No. 6:04-cv-1124-Orl-31DAB**

**OSCEOLA COUNTY SHERIFF'S OFFICE,**

      **Defendant.**

_____

# ORDER

This case is before the Court on Defendant Oceola County Sheriff's Office's ("Oceola Sheriff's Office") Motion for Summary Judgment (Doc. 23) and Plaintiff Randal Fornes's Opposition (Doc. 30) thereto.

## I. BACKGROUND

The Oceola Sheriff's Office hired Fornes as a deputy sheriff in 1994. Fornes eventually attained the rank of sergeant, and his most recent assignment was as a supervisor in its crime-scene unit. In that position, Fornes's primary duties involved collecting evidence and supervising the collection of evidence at crime scenes.

In mid-January 2001, Fornes developed a rare affliction initially diagnosed as Guillian-Barre syndrome. It began with numbness in his extremities, later progressed into substantial paralysis of his arms and legs, and may have interfered, at times, with his vital organs. Fornes's immune system was attacking his neurological system, and had he not received treatment, the affliction could have killed him. Because of the affliction's persistence, doctors eventually reclassified it as chronic inflammatory demyelization polyneuropathy ("CIDP"). Fortunately, after

spending most of February 2001 in the hospital, time at home, and two shorter hospital stays in April and May 2001, a neurologist determined a course of treatment that alleviated the worst of Fornes's symptoms in about a month.  By June 18, 2001, Fornes was back on his feet, and he considered his overall strength and endurance sufficient to return to work.

During the five-month period in which Fornes suffered the worst of his symptoms, the Oceola Sheriff's Office continued to pay his salary.  What made that possible was Fornes's accrued sick leave, vacation leave, and finally the generosity of other Sheriff's Office employees who donated leave accruals to a sick-leave pool.  Yet, by June 18, 2001, Fornes had exhausted all available leave accruals.  He had, however, received one of the most generous leave allotments of any Oceola Sheriff's Office deputy, and he was feeling much better.  Fornes had learned through discussions with the Oceola Sheriff's Office during his illness that, if he was not able to return to full duty by June 18th, his employment would terminate.  Accordingly, with the intention of getting cleared to return to work, Fornes visited his family doctor, Dr. Littell.

Dr. Littell reviewed Fornes's job description and, through a discussion with Fornes, ascertained and reported Fornes's physical capacity as follows: "Mr. Fornes was examined by me and is capable of performing all job-related duties except running, heavy lifting, prolonged standing or repetitive constant motion."  (Doc. 29-3 at 23) (emphasis in original).  With that report in hand, Fornes went to the Oceola Sheriff's Office on July 18, 2001 and presented himself as ready for service.  The Oceola Sheriff's Office, however, did not share Fornes's personal assessment.  Based on the reported limitations, the Sheriff determined that Fornes was not fit to perform the duties of a deputy sheriff.  The Sheriff, therefore, terminated Fornes's employment.  The Sheriff did, however, indicate that if Fornes recovered from his physical limitations he would be given preference for rehiring.

Fornes has sued the Oceola Sheriff's Office for a violation of the Amercians with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA"). Fornes claims, in essence, that he was a qualified individual with a disability and that the Oceola Sheriff's Office discriminated against him by failing to make a reasonable accommodation to enable him to work. In that regard, Fornes argues that it would have been reasonable either (1) simply to allow him to resume his former position or (2) to grant him a leave of absence until he recovered from his physical limitations. The Oceola Sheriff's Office has, in turn, filed a Motion for Summary Judgment (Doc. 23) asserting that Fornes was not disabled within the meaning of the ADA and he was not qualified to resume his duties.

## II.     STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Whether a fact is material depends on the substantive law of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If there is an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof, that party must "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Summary judgment is mandated against the nonmoving party who thereafter fails to present sufficient evidence to establish a genuine issue of fact for trial. *Id.* at 322, 324-25.

In this review, the Court must consider all inferences drawn from the underlying facts in a light most favorable to the nonmoving party, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. If a material issue of fact exists, the court must not decide it, but rather, must deny summary judgment and proceed to trial. *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[1] But "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. LEGAL ANALYSIS

The ADA provides, in relevant part, that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines "discriminate" to include, in relevant part, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless the covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of [its business]." *Id*. § 12112(b)(5). To establish a prima facie case of disability discrimination under the ADA, a plaintiff must prove that "(1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Holbrooke v. City of Alpharetta, Georgia*, 112 F.3d 1522, 1526 (11th Cir. 1997).

---

[1] Unless reversed, decisions of the Fifth Circuit prior to October 1, 1981 are binding precedent on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Fornes's claim that he is disabled is based primarily on the extent of impairment he experienced as his affliction progressed.  In this regard, he points out that while suffering the worst of his symptoms, he was virtually unable to perform the simplest of tasks; and although his condition improved substantially by June 18, 2001, he was still unable to run.  Fornes asserts, furthermore, that even if he was not actually disabled, the Osceola Sheriff's Office recorded or considered him as impaired, such that he should be deemed "disabled" under the ADA.  The Osceola Sheriff's Office contends that neither the duration nor the nature of Fornes's impairment qualify him as disabled, and it did not consider him disabled.

To qualify as "disabled" under the ADA, a plaintiff must prove that he has (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) is "regarded as having such an impairment."  42 U.S.C. § 12102(2); *Toyota Motor Manuf., Kentucky, Inc. v. Williams*, 534 U.S. 184, 534 U.S. 184, 194 (2002).  True to the wording of the root disability definition, the Supreme Court has given the words "*substantially* limits" and "*major* life activities" their ordinary meaning in *Toyota Motor Manufacturing*.  *See* 534 U.S. at 194-95. An impairment must be of a fairly large or considerable degree, which excludes minor physical hindrances to doing manual tasks.  *Id.* at 196-97.  The impairment must also substantially hinder activities that are of central importance to daily life.  *Id.* at 197.  In sum, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  *Id.* at 198. An inherent facet of that requirement is that "[t]he impairment's impact must also be permanent or long term."  *Id.*

Disability is to be determined on a case-by-case basis, and the criterion of that determination is not merely the name or diagnosis of an impairment; rather, it is the particular effect of the impairment on daily life. *Id.*

Fornes asserts, in this context, that running is a major life activity that he was unable to do as of June 18, 2001. Fornes otherwise relies on the peak severity of his CIDP symptoms as well as the duration of his limitations as proof of disability; he points out, in the latter regard, that his treating neurologist did not declare him free from CIDP-related limitations until June 12, 2002. The underlying logic of Fornes's position appears to be that because he could not run or do certain other strenuous physical activities as of June 18, 2001, he was barred from his law-enforcement position, and was, therefore, substantially limited in his ability to work. The problems with Fornes's position and assumptions are at least four-fold.

First, the inability to run and to do other strenuous physical activities does not qualify as substantial limits on major life activities, as understood in *Toyota Motor Manufacturing*. *See id.* at 197-98. Relevant regulations define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 45 C.F.R. § 84.3(j)(2)(ii). Unlike those exemplar activities, strenuous physical activities simply are not of central importance to most people's daily lives. *See Toyota Motor Manuf.*, 534 U.S. at 197-98. For better or worse, Americans lead largely sedentary lifestyles in which strenuous physical activity is generally an optional endeavor for those concerned with their appearance or cardio-vascular health. Although anecdotal, even Fornes seems to take this view. He claims that his previous position as a crime scene unit supervisor for the Oceola Sheriff's Office did not require him to run, lift heavy objects, etc., and he has failed to assign any importance to such activities other than as job requirements for law enforcement officers.

Second, the inability or perceived inability to perform one type of job is not a substantial limitation on the major life activity of working. "[A]n impairment must preclude – or at least be perceived to prelude – an individual from more that one type of job, even if the job foreclosed is the individual's job of choice." *Rossbach v. City of Miami*, 371 F.3d 1354, 1359 (11th Cir. 2004) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999)). To qualify as a disability, an impairment must preclude or be perceived to preclude performance of a "class of jobs" or "broad range of jobs." *Id*. at 1360. It is the settled law "that 'police officer' is too narrow a range of jobs to constitute a 'class of jobs' . . . ." *Id.* at 1361. So whether his impairments precluded, or were perceived to preclude, him from law enforcement duties, that does not support a finding that Fornes was disabled or was regarded as disabled according to the ADA.

Third, the peak severity of Fornes's CIDP symptoms is not the appropriate measure of Fornes's affliction; rather, it is a minor factor in comparison to the duration and average limitations accompanying those symptoms, once treated. To be sure, Fornes was almost completely incapacitated by his affliction before he received the proper course of treatment. ADA implementing regulations, however, define the "substantially limits" prong of the disability test in terms of being "unable to perform a major life activity . . . ." or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity . . . ." 29 C.F.R. § 1630.2(j)(1). The regulations call for considering, in that regard, the "(i) nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact of or resulting from the impairment." *Id*. § 1630.2(j)(2). The impairment must be permanent or long term. *Toyota Motor Manuf.*, 534 U.S. at 198. By that measure, Fornes's impairment experience is not sufficiently substantial.

For comparison, *Colwell v. Suffolk County Police Department*, 158 F.3d 635, 639-41 (2nd Cir. 1998), dealt with three injured police officers claiming job discrimination under the ADA. Among the officers was one who had suffered a cerebral hemorrhage in 1984, after which he was hospitalized for 30 days and remained home for six months. *Id.* at 640. Although this condition purportedly limited him from doing strenuous physical labor even several years later, the court considered it insufficient to qualify as a disability. *Id.* at 644-45. It is apparent that symptoms and limitations cannot be viewed in isolation, at their peak severity; rather, substantial, reasonably ascertainable, long-term impairment is required. *Id.*; *Toyota Motor Manuf.*, 534 U.S. at 198-99.

Finally, Fornes has not designated any evidence from which to infer that the Oceola Sheriff's Office actually viewed his affliction in a skewed light, as a recurrent or long-term "disability." Within about a month of receiving the proper course of treatment, Fornes recalls meeting the Sheriff and the chief deputy, face to face, and telling them that he could perform his duties, that the only thing he could not do is run, but that he could walk well. If so, he was living proof that his symptoms were on the decline. Furthermore, he has not designated, and the record does not reveal, evidence that the Oceola Sheriff's Office received information – *e.g.*, diagnostic or prognostic records – indicating the likelihood or frequency of Fornes suffering a relapse.[2] Rather, it appears that the relevant decisionmakers perceived Fornes as merely incapable, as of June 18, 2001 and for a some period of time thereafter, of doing certain strenuous activities required of full-duty sheriff's deputies. As previously discussed, the inability or perceived inability to do such things does not qualify as a disability under the ADA.

---

[2] Although (absent expert medical opinion) it may be inappropriate to credit the decisionmakers with foresight of what would happen after June 18, 2001, what actually happened was that Fornes's treatments continued, his affliction went into remission, and he did not suffer a relapse.

### IV. CONCLUSION

In sum, Fornes has failed to establish the first requirement of a prima facie case – that he is disabled within the meaning of the ADA.[3]  It is therefore

**ORDERED** that Defendant Osceola Sheriff's Office's Motion for Summary Judgment (Doc. 23) is **GRANTED**.  This case is removed from the Court's trial calendar, any other pending motions are denied as moot, and the Clerk of the Court is directed to enter judgment for the Defendant and close this case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 17, 2005.

*[signature]*
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

[3] Although his case has failed on that basic point, the Court notes that Fornes's attack on the reasonableness of the Oceola Sheriff's Office's employment policies appears invalid.  While Fornes puts great stock in the fact that his previous job's description indicated that "running" and other strenuous activities were infrequently required, law enforcement is a profession that has its moments of great need.  The Court would be hard pressed to find running and similar abilities unreasonable requirements for law-enforcement officers.